**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ELISARDO VARGAS and
JESSICA VARGAS, husband and wife,

      Plaintiffs,

vs.                                                               No. CIV 03-0560  JB/LFG

STATE FARM FIRE AND CASUALTY COMPANY,
and DEBBIE BRISTOW,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on the Plaintiffs' Motion to Remand to State Court (Docket No. 6) and on the Defendant State Farm Fire and Casualty Company's Motion to Dismiss Defendant Debbie Bristow for Fraudulent Joinder (Docket No. 3). The primary issue, common to both motions, is whether the Plaintiffs, Elisardo and Jessica Vargas ("the Plaintiffs"), have fraudulently joined Defendant Debbie Bristow ("Bristow") to avoid federal court jurisdiction. Because the Court finds that the Plaintiffs are able to state at least one cause of action against Bristow for which relief may be granted under state law, the Plaintiffs did not improperly join her as a defendant. Thus, there is not complete diversity between the parties, and the Court does not have jurisdiction to hear this case. The Court will grant the Plaintiffs' motion to remand and, because the Court does not have jurisdiction over the case, will not decide the Defendants' motion to dismiss Bristow.

**FACTUAL AND PROCEDURAL BACKGROUND**

On February 12, 2003, the Plaintiffs filed this case in the First Judicial District Court, County of Santa Fe, State of New Mexico, against Defendant State Farm Fire and Casualty Company ("State Farm") and Bristow, a senior claim representative with State Farm. Bristow is a State Farm employee. See Complaint ¶ 3, at 2. The Plaintiffs do not assert, or otherwise contend, that Bristow was acting outside the scope of her duties as an adjuster for State Farm at the time of the alleged misconduct.

The Complaint alleges four state-law counts: (i) breach of contract; (ii) insurance bad faith and breach of fiduciary duties; (iii) violation of the New Mexico Insurance Code; and (iv) violation of the New Mexico Unfair Practices Act. Counts I, II, and III contain allegations directed toward both State Farm and Bristow. Count IV, on the other hand, appears to make allegations against State Farm only.

Service of the Complaint upon Bristow occurred on April 11, 2003. The Defendants filed a Notice of Removal to the United States District Court for the District of New Mexico on May 12, 2003. The Plaintiffs are residents of Farmington, San Juan County, New Mexico. Bristow is also a New Mexico resident. State Farm is a foreign corporation with its principal place of business in Bloomington, Illinois.

The Plaintiffs' claims arise out of the alleged improper failure of State Farm and Bristow--the State Farm adjuster who investigated the Plaintiffs' claim--to pay homeowners' insurance benefits after the Plaintiffs' home caught fire on March 29, 2002. The Plaintiffs' Complaint contains a number of allegations of specific acts on the part of Bristow that they contend are violative of the New Mexico Insurance Code. For example, the Plaintiffs allege that, at their first meeting, Bristow

accused them of lying about where they were during the fire.  See Complaint ¶ 13, at 3.  Next, the Plaintiffs allege that Bristow entered their residential property without their permission and took personal property belonging to them without their permission.  See id. ¶ 14, at 3.  The Plaintiffs further allege that Bristow boarded up their home and told them that they could not enter their home until State Farm gave them permission.  See id. ¶¶ 15-16, at 3.

The Plaintiffs specifically allege that Bristow failed to timely and thoroughly investigate their claims and failed to pay the reasonable proceeds due for their loss.  See id. ¶¶ 30-31, at 5.  Finally, the Plaintiffs allege that Bristow repeatedly and unreasonably subjected them to examinations of their burnt home, conducted exhaustive interviews on information not related to the fire, demanded records not necessary for the determination of the claim, and demanded that they send possessions to laboratories for testing that could lead to the destruction of those possessions.  See id. ¶ 43, at 7.

## THE LAW GOVERNING
## DIVERSITY JURISDICTION AND FRAUDULENT JOINDER

The federal courts have original jurisdiction over actions based on diversity of citizenship where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. See 28 U.S.C. § 1332.  The Tenth Circuit Court of Appeals has stated that district courts "must rigorously enforce Congress' intent to restrict federal jurisdiction in controversies between citizens of different states, . . . and that the presumption is therefore against removal jurisdiction."  Martin v. Franklin Capital Corp., 251 F.3d 1284, 1289 (10th Cir. 2001) (citations and quotations omitted). Because a defendant's right to remove and a plaintiff's right to choose his forum are not on equal footing, courts must construe removal statutes narrowly.  See id. at 1289-1290.

The Defendants concede that Bristow's presence would normally prevent removal of this case to federal court. In an effort to avoid the requirement of complete diversity, however, State Farm argues that the Plaintiffs did not properly name Bristow as a party. The Defendants argue that the Plaintiffs are attempting to drag State Farm, a foreign insurer, before a jury in Santa Fe, a jurisdiction that the Defendants contend the Plaintiffs anticipate will be more favorable than the jurisdiction where the Plaintiffs reside and where the events giving rise to this cause of action occurred. See Defendants' Response in Opposition to Motion to Remand to State Court at 1.

"'Joinder designed solely to deprive federal courts of jurisdiction is fraudulent and will not prevent removal.'" Kohl v. American Home Products Corp., 78 F. Supp. 2d 885, 889 (W.D. Ark. 1999) (quoting American Home Ins. Co., 724 F.2d 82, 84 (8th Cir. 1983)). The fraudulent joinder doctrine's purpose is to prevent plaintiffs from naming parties of the same citizenship solely to avoid removal of the action to federal court. See Kohl v. American Home Products Corp., 78 F. Supp. 2d at 889.

To prove fraudulent joinder, the removing defendant must prove either that (i) there is no possibility that the plaintiff will be able to establish a cause of action against the nondiverse defendant in state court, or (ii) there has been outright fraud in the plaintiff's pleadings of jurisdictional facts. See 15 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE - CIVIL § 102.21 (3d ed. 2003). In this case, State Farm does not argue that the Plaintiffs have committed fraud in pleading jurisdictional facts. See State Farm's Brief in Support of Motion to Dismiss Bristow at 4-5. Instead, State Farm relies upon the argument that the Plaintiffs' Complaint fails to state a colorable claim against Bristow. See id.

The United States District Court for the District of Louisiana has provided a good description of the Court's authority in a case such as the one before the Court:

> Fraudulent joinder is a judicially created theory predicated upon the inherent authority of a federal court to protect its own jurisdiction. Since the Congress has, by statute, granted the right to defendants in certain state court actions to remove the action to federal court, 28 U.S.C. §1441(a), the federal courts have the power and the duty in protecting their jurisdiction, <u>to inquire into and to ignore joinder of parties defendant against whom no real cause of action is alleged and who are joined in order to defeat federal jurisdiction</u>.

Erdey v. American Honda Co., Inc., 96 F.R.D. 593, 596 (D.C. La. 1983) (citations omitted) (emphasis added). Hence, the issue is whether the Plaintiffs have stated a claim against Bristow for which relief may be granted under New Mexico law.

The party asserting fraudulent joinder bears a heavy burden of proof. See Montano v. Allstate Indem., 211 F.3d 1278 (table opinion), 2000 WL 525592, at *1 (10th Cir. 2000). To prove allegations of fraudulent joinder, the removing party must demonstrate that there is no possibility that the plaintiff would be able to establish a cause of action against the joined party in state court. See id. "In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party." Id. (quoting Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000) (internal quotation marks and citation omitted)). The Court is then to "determine whether [the plaintiff] has any possibility of recovery against the party whose joinder is questioned." Montano v. Allstate Indem., 2000 WL 525592, at *1. "The test for fraudulent joinder is whether there is an arguably reasonable basis for predicting that state law might impose liability on the facts involved." 32A AM. JUR. 2D, *Federal Courts*, § 1630 (2003). Finally, the Court must remand the entire case if any one of the claims against the non-diverse defendant is possibly viable. See Green v. Amerada Hess Corp., 707 F.2d 201, 207 (5th Cir. 1983) ("Even if

[plaintiff] were [precluded] from pursuing all his claims save one in state court, a remand would be necessary.").

In deciding whether removal is proper, the Court must not pre-try the issues. See Smoot v. Chicago, R. I. & P. R. Co., 378 F.2d 879, 882 (10th Cir. 1967). On the other hand, to analyze whether there has been a fraudulent joinder, the Court may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal. See id. at 881-882 (citations omitted). Thus, the Court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available. See id. at 882 (citations omitted). As stated in Charlin v. Allstate Ins. Co., 19 F. Supp. 2d 1137 (C.D. Cal. 1998):

> While issues of liability may not ordinarily be determined on a motion to remand, it is well settled that upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal. Smoot v. Chicago Rock Island & Pacific Railroad Co., 378 F.2d 889, 891-92 (10th Cir. 1967). Thus, the court may 'pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.' Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964). The defendant seeking removal is entitled to present facts showing that the joinder is fraudulent. McCabe v. General Electric Corp., 811 F.2d 1336 (9th Cir. 1987).

Id. at 1140.

"[F]raudulent joinder, like any other allegation of fraud, must be pleaded with particularity and proven with certainty." See McLeod v. Cities Serv. Gas Co., 233 F.2d 242, 246 (10th Cir. 1956) (emphasis added). The Supreme Court of the United States has described the standard of proof as requiring a showing of a statement of facts rightly leading to that conclusion apart from the pleader's deductions. See Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). Thus, the Defendants must establish, as a matter of law, that there is no basis for liability against Bristow. See

Spence v. Flynt, 647 F. Supp. 1266, 1271 (D. Wyo. 1986) (citing McLeod v. Cities Serv. Gas Company, 233 F.2d 242, 246 (10th Cir. 1956); Smoot v. Chicago, R.I. and P. Railroad, 378 F.2d 879, 882 (10th Cir.1967)).

### APPLICATION OF FRAUDULENT JOINDER LAW TO THE PLAINTIFFS' CLAIM UNDER THE NEW MEXICO INSURANCE CODE

The Plaintiffs have stated four separate counts in their Complaint. Because the Court finds that there is a reasonable basis for finding liability against Bristow under the New Mexico Insurance Code, it need not address the remaining three counts. Furthermore, because a reasonable basis for liability exists under at least one of the theories alleged, the Plaintiffs did not improperly join Bristow.

In Count III of their Complaint, the Plaintiffs allege that the Defendants' conduct violated the New Mexico Insurance Code. The Defendants argue that the claims asserted in Count III arise from an insurance contract and assert an alleged failure to perform the contract terms in a reasonable manner. See Response in Opposition to Motion to Remand at 6. The Defendants cite a jury instruction dealing with bad faith failure to pay a first party claim in support of the proposition that, because Bristow is not a party to the contract, she cannot be liable to the Plaintiffs. See UJI 13-1702 NMRA 2003. That instruction, however, does not deal with the Insurance Code.

State Farm also contends that the Plaintiffs overlook the essential requirement that a contractual relationship must exist before any duty arises under § 59A-16-20 or before there is any violation of the Insurance Code. See Reply in Support of Motion to Dismiss Bristow at 4. The Defendants do not point to any language in the statute that sets forth such a requirement, but quote Charter Serv., Inc. v. Principal Mutual Ins. Co., 117 N.M. 82, 88, 868 P.2d 1307, 1313 (Ct. App. 1994): "[T]he concept of bad faith failure to pay in the insurance context does not arise

unless there is a contractual duty to pay under the policy." Again, that case does not involve the Insurance Code.

The Defendants' contention--that because Bristow is not a party to the contract between State Farm and the Plaintiffs, any cause of action against Bristow under the Insurance Code must fail as a matter of law--does not take into account statutory language that provides for the application of the Insurance Code to insurance adjusters regardless whether they are a party to the insurance contract. See, e.g., NMSA 1978 § 59A-16-1 (stating that the article "shall apply as to insurers . . . adjusters and all others persons engaged in any business which is now or hereafter subject to the superintendent's supervision under the Insurance Code . . . .") (emphasis added). The Plaintiffs argue that the provisions of the Insurance Code demonstrate the legislative intent that it apply to adjusters, in addition to insurers. The Court agrees.

The Court does not see anything in the Insurance Code that suggests that the Code restricts its application only to insurance companies. As stated above, it explicitly states that the Trade Practices and Frauds article of the Insurance Code "shall apply as to insurers, fraternal benefit societies, nonprofit health care plans, health maintenance organizations, prepaid dental services organizations, motor clubs, agents, brokers, solicitors, adjusters and all other persons engaged in any business . . . under the Insurance Code." Id. (emphasis added). Further, the Insurance Code defines "person," to include "an individual, association, organization, reciprocal, or Lloyds plan insurer, partnership, firm, syndicate, trust, corporation, and every legal entity." NMSA § 59A-1-10 (emphasis added).

According to the statute, there are certain identified claims practices that New Mexico prohibits. Specifically, the statute prohibits practices "by an insurer or other person, knowingly

committed or performed with such frequency as to indicate a general business practice . . . ." NMSA § 59A-16-20 (emphasis added). The Plaintiffs contend that Bristow violated the Insurance Code by: (i) misrepresenting important facts or policy provisions relating to coverage, see NMSA § 59A-16-20A; (ii) failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies, see NMSA § 59A-16-20B; (iii) failing to adopt and implement reasonable standards for the prompt investigation and processing of insured's claims arising under policies, see NMSA § 59A-16-20C; (iv) not attempting in good faith to effectuate prompt, fair, and equitable settlements of an insured's claim in which liability has become reasonably clear, see NMSA § 59A-16-20E; and (v) failing to settle all catastrophic claims within a 90-day period after the assignment of a catastrophic claim number when a catastrophic loss has been declared, see NMSA § 59A-16-20F. Given that the Legislature chose to include the language "other person" in this section, the Plaintiffs have a reasonable basis for asserting that Bristow violated the Insurance Code.

State Farm does not dispute that adjusters must comply with the law, including that set forth in the Insurance Code. See Reply in Support of Motion to Dismiss Bristow at 4. Instead, State Farm contends that nothing in the Insurance Code suggests that adjusters can be held personally liable when they commit an alleged violation, and that the law holds the insurer liable for the negligent acts of its employers. See Response in Opposition to Motion to Remand at 6. In other words, although the Insurance Code may proscribe conduct by all persons regarding insurance practices, only an insurer can actually be held liable in a civil action for a violation. Thus, the issue becomes whether the Insurance Code allows the Plaintiffs to bring a private cause of action against Bristow personally for such a violation.

On its face, the statute does not preclude the imposition of liability on employees of insurance companies. While the insurer may be liable for its employees' negligent acts, there is nothing that precludes liability from being imposed against Bristow. The Court of Appeals for the Tenth Circuit has stated that:

> A master and servant are each liable for injuries caused by the negligence of the servant in the course of his employment. The servant is liable because he committed the tort and the master is liable under the doctrine of respondeat superior. While they may not be joint tortfeasors in the sense that their joint acts caused an injury, a majority of the courts hold that their liability is joint and several and each is liable to the full extent of the injuries and they may be joined in an action in the same manner as joint tortfeasors.

United States v. First Sec. Bank of Utah, 208 F.2d 424, 428 (10th Cir. 1954).

State Farm contends that Bristow cannot be held liable under a contract theory. That may be true; however, it does not mean that she cannot be held liable under the Insurance Code. The provisions discussed above indicate that the Legislature intended for the Code to apply to a broad range of persons and entities, despite that the contract itself is between the insured and the insurer.

The Defendants argue that the Plaintiffs do not cite to any provision that spells out a cause of action against an employee of an insurer acting within the course and scope of her employment. The Insurance Code contains, however, a section covering the availability of private rights of actions. It provides that "[a]ny person . . . who has suffered damages as a result of a violation of [the Trade Practices and Frauds article] by an insurer or agent is granted a right to bring an action in district court to recover actual damages." NMSA § 59A-16-30 (emphasis added). This section, by its own terms, creates a private right of action for violations by insurers and agents. An insurer, like any other corporation, can act only through its officers, directors and authorized employees. See Sanchez v. Securities Acceptance Corp., 260 P.2d 703, 707, 57 N.M. 512, 517 (1953). The provision does not

limit the right of action to lawsuits against the insurer, but states which violations may entitle a plaintiff to relief.

Also, for purposes of that article, the term "insurer" includes adjusters. NMSA § 59A-16-1 (as amended, 2001) (amending section to insert term "persons" within definition of insurer for purposes of Trade Practices and Frauds article). In light of this amendment, the term "insurer," as §59A-16-30 uses it, includes adjusters within its scope. Thus, this provision grants individuals a private right of action for the misconduct of insurance adjusters such as Bristow.

A review of other sections of the Insurance Code supports the conclusion that the language of the private right of action provision reflects the Legislature's intent to allow private rights of action against adjusters. For example, the Insurance Code requires adjusters to obtain a bond "conditioned to pay actual damages resulting to . . . any member of the public in New Mexico from violation of the law . . . while acting as an adjuster." NMSA § 59A-13-5. This provision, however, specifically exempts staff adjusters -- and thus Bristow -- from the bond requirement. See id. The Insurance Code defines staff adjusters as adjusters who are salaried employees of an insurer. See NMSA § 59A-13-2. Apparently, the Legislature decided that staff adjusters do not need a bond because the insurer will typically be the entity that ultimately pays any judgment. The bond required from other adjusters, however, can be fairly construed as reflecting the Legislature's intent to allow recovery in civil actions against an adjuster violating the Insurance Code. And there is no sound reason, based on the wording of the Insurance Code, to make any distinction between staff adjusters and other adjusters for determining who can be sued.

The Plaintiffs have charged Bristow with specific acts of misconduct in specific terms. These allegations are sufficient to avoid a finding of fraudulent joinder on the ground that Bristow

personally had nothing to do with the alleged wrongful conduct.  See Lobato v. Pay Less Drug Stores, Inc., 261 F.2d 406, 409 (10th Cir. 1958) (affirming dismissal of action where complaint failed to charge any specific acts on the part of the individual defendants).  Based on the private right of action provision, these allegations are also sufficient to state a claim against Bristow, individually, under the Insurance Code.  Accordingly, the Court finds that the Plaintiffs have stated a colorable claim under state law in Count III of their Complaint against Bristow.  Because Bristow is a properly joined defendant, complete diversity of citizenship does not exist in this action.

## **COSTS AND ATTORNEY FEES**

Because the Court will grant the Plaintiffs' motion to remand, they request an order pursuant to 28 U.S.C. § 1447(c) for payment of just costs and actual expenses, including attorney fees, incurred as a result of the removal.  Section 1447(c) provides: "An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  Id.  In deciding whether to award costs and attorney fees under § 1447(c), the key factor is the propriety of defendant's removal.  See Excell, Inc. v. Sterling Boiler & Mechanical, Inc., 106 F.3d 318, 322 (10th Cir. 1997) (citing Daleske v. Fairfield Communities, 17 F.3d 321, 324 (10th Cir. 1994), cert. denied, 511 U.S. 1082 (1994)).  The district court does not have to find that the defendant removed the state court action in bad faith as a prerequisite to awarding costs and attorney fees under § 1447(c).  See Daleske v. Fairfield Communities,  117 F.3d at 324.  In light of the high standard necessary to prove fraudulent joinder (i.e. that no reasonable basis exists for predicting that state law might impose liability), and the Insurance Code's private right of action provision, the Defendants improperly removed this action on the basis of fraudulent joinder.

Accordingly, the Court will grant the Plaintiffs' request for an order requiring the Defendants to pay the costs, expenses, and attorneys fees that the Plaintiffs have incurred as a result of this removal.

**WHEREFORE, IT IS ORDERED** that the Plaintiffs' Motion to Remand to State Court is granted, and this matter is hereby remanded to the First Judicial District Court, County of Santa Fe, State of New Mexico. The Court further orders that the Defendants pay the costs, expenses, and attorney fees that the Plaintiffs have incurred as a result of this removal.

---
**UNITED STATES DISTRICT JUDGE**

*For Plaintiffs*: Roger V. Eaton
Gabrielle M. Valdez
Eaton, Martinez, Hart & Valdez, P.C.
Albuquerque, New Mexico

*For Defendants*: Terry R. Guebert
RaMona G. Bootes
Guebert, Bruckner & Bootes, P.C.
Albuquerque, New Mexico